UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-00178-TBR

DION L. LUTHER                                                                    PLAINTIFF

v.

KENTUCKY DEPARTMENT OF CORRECTIONS, et al.,                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendants' Christopher Kleymeyer, Skyla Grief, and Dan Smith, collectively ("Defendants"), Motion for Summary Judgment. [DN 11.] *Pro se* plaintiff, Dion Luther ("Luther"), has responded [DN 14] and Defendants have replied. [DN 15.] Luther additionally filed a response to Defendants' reply. [DN 17.] As such, this matter is ripe for adjudication. For the reasons that follow. Defendants' Motion for Summary Judgment [DN 11] is **GRANTED IN PART** and **DENIED IN PART.**

### I. Background

Luther is an inmate at Western Kentucky Correctional Complex ("WKCC"). This claim, however, arises from matters when Luther was an inmate at Kentucky State Penitentiary ("KSP"). After review by the Court, Luther's remaining claims are: (1) First Amendment and RLUIPA violation against Grief and Smith for the denial of an Ital diet; (2) First Amendment and RLUIPA violation against Kleymeyer for the denial of creational banners; and (3) First Amendment and RLUIPA violation against Kleymeyer and Smith for the denial of Bobo Ashanti robes. [DN 6 at 10.]

### II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id*. (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

#### A. Exhaust Administrative Remedies

##### 1. Diet Claim

Defendants first argue summary judgment is appropriate because Luther failed to exhaust administrative remedies by failing to list all Defendants on the grievance and his grievance was

about a specific incident rather than the general claim made in the complaint. Luther argues all Defendants were provided notice of his claim due to conversations he had with Defendants and the relief requested in his grievance. The Court agrees with Defendants.

The Prison Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing Jones, 549 U.S. at 204).

The Sixth Circuit has held that "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (citing *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009)). Exception has been made when the prison overlooks this mistake and decides the grievance on the merits. *See Reed-Bey v. Pramstaller,* 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we.")

Here, Kentucky Corrections Policies and Procedures ("CPP") 14.6(II)(J)(1)(a)(5) states that "[t]he grievant shall include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem.'" Luther filed grievance number 18-02-099-G stating "[d]uring lockdown…I was deprived of adequate nutrition in accordance with the American Correctional Association." [DN 1-2 at PageID 19.] Luther goes on to state that he was denied a "Ital (vegetarian) diet". [*Id.*] On the form, Luther lists Amy Fischer, Skyla Grief, and Aramark as respondents. [*Id.*] However, in his complaint, Luther alleges Defendant Dan Smith also violated his rights by "fail[ing] to rectify the situation once the Plaintiff pleaded with him. [DN 1-1 at PageID 10.] Luther alleges he "had dialogue with the Defendants" and made Defendant Smith aware of his "malnutrious state" which provided him with notice. [DN 14 at PageID 154; DN 1-1 at PageID 10.]

The Court agrees with Defendants that this claim against Defendant Smith must be dismissed due to a failure to exhaust administrative remedies. The procedure explained in CPP 14.6(II)(J)(1)(a)(5) clearly requires inmates to identify all individuals that are involved in the incident. Luther did not list Defendant Smith. The exception the Court described in *Reed-Bey* does not apply here. In that case, Reed-Bey did not name a single individual in his grievance. *Reed-Bey*, 603 F.3d at 324. Further, the prison went on to consider the grievance despite this defect. *Id.* Here, Luther did name certain individuals in his grievance. Therefore, there was no procedural defect that the prison declined to enforce. Since Defendant Smith is not named in the grievance, this claim against him must be dismissed for failure to exhaust administrative remedies.

Defendants also argue Luther has not exhausted his administrative remedies with regard to his claim of "a general denial of the ability to select a diet that comports with the Rastafari religion." [DN 11-1 at PageID 96.] On the above-mentioned grievance form, Luther stated the

problem was "*during lockdown* which began on or about 2/21/18 due to security measures." [DN 1-2 at PageID 19.] (emphasis added). Nowhere in the Brief Statement of the Problem section did Luther make a general claim about his diet. In the Action Requested section, Luther wrote that he requested he "be allowed to choose from a[n] alternative menu which includes the no-flesh option, so that I can conform to my Ital (vegetarian) way of life." [*Id.*] Luther argues that this statement "was done intentionally and specifically in the event that other circumstances which may arise in the future when the respondents/defendants may take the same action as they did during the February 21, 2018 lockdown would be condemned by the Plaintiff's grievance." [DN 14 at PageID 154.] In his complaint, Luther states "in addition to the lockdown of February 21, 2018, the Plaintiff has been blatantly starved on numerous lockdowns and occasions." [DN 1-1 at PageID 10.]

CPP 14.6(II)(J)(1)(a)(5) clearly states "[t]he grievant shall include all aspects of the issue and identify all individuals *in the "Brief Statement of the Problem"* section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." (emphasis added). The policy requires inmates to state all aspects of the issue in a specific section. Luther's argument that his statement in the "Action Requested" section cannot save his claim. Furthermore, it cannot be said that this statement, even if placed in the proper section, would provide the proper notice. "[A] grievance must provide notice of the problem at hand." *Cooper v. Vincent,* 2019 U.S. Dist. LEXIS 187111 *11 (W.D. Ky. Oct. 28, 2019) (citing *Pruitt v. Holland,* 2011 U.S. Dist. LEXIS 621 *5 (E.D. Ky. Jan. 4, 2011). It cannot be said that Luther's request for future action gives notice that he alleged Defendants violated his rights on prior occasions. Therefore, any claim against Defendants alleging they denied Luther an appropriate diet, except for the claim stemming

5

from the lockdown against Defendant Grief, must be dismissed due to a failure to exhaust administrative remedies.

   **2. Bobo Ashanti Robes**

Defendants again argue this claim against Dan Smith and Skyla Grief should be dismissed due to a failure to exhaust administrative remedies. In his compliant, Luther only lists the "Kentucky Department of Corrections, Chris Kleymeyer, and Dan Smith" as the ones who violated this right. [DN 1-1 at PageId 17.] Luther filed grievance number 17-10-011-G alleging his rights were being violated "by not being permitted to purchase a Bobo Shanti Rastafari robe for religious services, and to wear in my cell." [DN 1-2 at PageID38.] Luther only listed Defendant Kleymeyer as respondent on the grievance. [*Id.*] Defendants Smith and Grief were not listed and therefore did not have a fair chance to respond to this allegation. As such, Luther did not exhaust administrative remedies against Defendants Smith and Grief and those claims must be dismissed.

**B. Qualified Immunity**

Defendants argue they are entitled to qualified immunity for the religious diet claim. Luther argues he has proven Defendants' conduct violated his constitutional rights and that the right was clearly established.

Pursuant to qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847-48 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity." *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First,

a court must determine whether the facts alleged show that the defendant's conduct violated a constitutional right." *Id.* (citing *Saucier*, 533 U.S. at 201). "If the plaintiff establishes that a constitutional violation occurred, a court must next consider 'whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to it. *Id.* (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The Court may, in its discretion, decide which of these two inquiries is addressed first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (refining *Saucier*, 533 U.S. at 201).

"[P]rison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions". *Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir. 2010). "[I]f the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.* (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). In this context, an "adequate diet" typically means the "right not to eat the offending food item" and to remain free from malnourishment while doing so. *Alexander*, 31 F. App'x at 179.

Defendants cite *Alexander,* 31 Fed. Appx. 176 (6th Cir. 2002) to support their case. In *Alexander,* Alexander was placed in a close observation cell. *Id.* at 177. He was served "breakfast bags" which included a "carton of milk, fruit, and a peanut butter and jelly sandwich." *Id.* Alexander refused to eat the sandwich due to the grape jelly and his vow as a Nazerite not to eat grapes. *Id.* He was then placed on a "Nutri-loaf diet for a period of seven days." *Id.* Once removed from the Nutri-loaf diet, Alexander again refused the peanut butter and jelly sandwiches. *Id.* at 178. That Court held "[i]f the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.* at 179.

7

Here, Luther claims he was in a "malnutritious state" during the lockdown. [DN 1-1- at PageID 11.] However, he provides no evidence to support that claim. There also is no evidence on the record that Luther was provided an adequate diet without eating offending foods. Without evidence of the diet Luther was provided during this time, this Court cannot determine whether a constitutional right has been violated.

Defendants go on to state "[f]or the remaining claims…the above-cited case law demonstrates that the law surrounding these matters was not clearly established at the time these events occurred." [DN 11-1 at PageID 101.] However, the case law Defendants cited all pertained to a religious diet. Defendants do not cite to any case or argue how the cited case law applies to Luther's other claims. Therefore, Defendants have not met their burden and qualified immunity is denied.

## C. RLUIPA

Defendants argue Luther's First Amendment and RLUIPA claims for injunctive relief are moot due to him being transferred from KSP to WKCC. [DN 12.] Luther argues his claims against Defendant Kleymeyer are not moot because Kleymeyer is a KDOC official. Luther also argues his claims against Defendant Smith are not moot because Smith is employed at WKCC.

In *Kensu,* the Sixth Circuit stated, "To the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail." *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996). The Sixth Circuit has repeatedly affirmed that position stated in *Kensu. See Newell v. Ford,* No. 16-6449, 2016 WL 9737926, at *1 (6th Cir. Oct. 31, 2016); *Colvin v. Caruso,* 605 F.3d 282, 289 (6th Cir. 2010).

Luther argues that Defendant Smith is now employed at WKCC and there "exists a higher capability for repetition." [DN 17 at PageID 201.] The case before the Court does not deal with

any alleged violations at WKCC. Injunctive relief for actions that allegedly occurred at a different prison is not appropriate. However, even if Luther's claim for injunctive relief against Defendant Smith was not moot, it would still be dismissed for the above-stated reasons. The Court also finds the claim against Defendant Grief is moot due to Luther's transfer.

However, The Court agrees with Luther that his claim against Kleymeyer is not moot. When an inmate asserts claims against prison officials and is later moved from that prison, those claims are moot. *Henderson v. Martin,* 73 Fed. Appx. 115, 117 (6th Cir. 2003). However, Defendant Kleymeyer was not an official at KSP. Kleymeyer was the Director of Operations at the Kentucky Department of Corrections. Therefore, the claims against him are not moot. The Court will only dismiss Luther's First Amendment and RLUIPA claims for injunctive relief against Defendants Grief and Smith.

Defendants also argue Luther's RLUIPA claim regarding the religious diet should be dismissed for failure to state a claim. The Court has already determined this claim is moot against Defendants Grief and Smith. Luther does not have a claim against Defendant Kleymeyer regarding his religious diet. Defendants do not argue that the RLUIPA claims regarding the denial of robes or creational banners should be dismissed due to failure to state a claim. Therefore, those claims against Defendant Kleymeyer must remain.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that:

1.) Defendants' Motion for Summary Judgment [DN 11] is **GRANTED IN PART** and **DENIED IN PART**;

2.) All claims against Defendant Grief in the above-captioned action are **DISMISSED WITH PREJUDICE**; and

9

3.) All claims against Defendant Smith in the above-captioned action are **DISMISSED WITH PREJUDICE**.

The Clerk of Court is **DIRECTED to terminate Defendants Grief and Smith** as Defendants to this action because all claims against them have been dismissed.

**IT IS SO ORDERED.**

cc: Dion L. Luther
    275398
    WESTERN KENTUCKY CORRECTIONAL COMPLEX
    374 New Bethel Road
    Fredonia, KY 42411
    PRO SE