# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# PADUCAH

| | |
|---|---|
| DION L. LUTHER, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) Case No. 5:18-cv-00178 (TBR) |
| KENTUCKY DEPARTMENT OF CORRECTIONS, et al., | ) ) ) |
| *Defendants.* | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants'—Chris Kleymeyer and Janet Conover—Motion for Summary Judgment, Mot. for Summ. J., Dkt. 55. Plaintiff Dion L. Luther has responded, Resp., Dkt. 56. Defendants have replied, Reply, Dkt. 59. Plaintiff has filed another response, which the Court considers to be a surreply, Surreply, Dkt. 60. For the reasons that follow, Defendants' Mot. for Summ. J., Dkt. 55, is **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

To understand the matter before the Court, a summary of the somewhat lengthy factual and procedural background is necessary. A few additional facts are set out in the body of the opinion, but this recitation provides helpful perspective for how we ended up where we are today.

Dion Luther is presently an inmate at Eastern Kentucky Correctional Complex (ECCC) in West Liberty, Kentucky. *See* Surreply. At the time this lawsuit was commenced, Luther was an inmate at the Kentucky State Penitentiary (KSP) in Eddyville, Kentucky. *See* Compl., Dkt. 1-1. Luther is a practitioner of the Bobo Ashanti religion, a sect of Rastafarianism. *See id.*

According to Luther, Bobo Ashanti requires its followers to, among other things, maintain an Ital diet, incorporate creational banners into worship services, and wear robes. *See id.* at 1–10.

During his incarceration at KSP, Luther submitted a series of requests to the Department of Corrections, complaining about how the prison's policies interfered with his practice of Bobo Ashanti. *See* Grievance Forms, Dkt. 1-2. On March 22, 2017, and February 27, 2018, Luther requested that the prison provide him with an Ital diet. *See id.* at 1–3, 7. These requests were denied by James Erwin (Commissioner of the Kentucky Department of Corrections (KDOC)), as were Luther's appeals. *See id.* at 4, 6. On October 3, 2017, Luther requested that he be allowed to purchase religious robes, even though the KDOC Religious Reference Manual did not allow robes as personal religious items. *See id.* at 20–22. This time, Randy White (Warden of KSP), Dan Smith (Program Director, KSP), and Skyla Grief (Deputy Warden, KSP) denied the request, and James Erwin denied the appeal. *See id.* at 25, 27. On March 6, 2018, Luther requested that he be allowed to purchase creational banners, something not covered in the Religious Reference Manual. *See id.* at 9–10. Once more, Randy White denied the request and James Erwin denied the appeal. *See id.* at 13, 16.

At this point, to maintain a chronological narrative, the Court takes a small detour from Luther's story. At the same time that Luther was going through the formal grievance process, Chris Kleymeyer was working as the Director of Operations for KDOC. Kleymeyer describes his job responsibilities in that role as, primarily, "supervision of the Capital Construction Branch, the Food Services Branch, the Policy and Procedures Branch, the Education Branch, and other tasks assigned by the Deputy Commissioner, Office of Adult Institution and/or Commissioner of the Department of Corrections." First Kleymeyer Aff., Dkt. 55-2, ¶ 2. However, Kleymeyer states that his responsibilities did touch on religious affairs. *See id.* For instance, Kleymeyer

explains that at the request of the Commissioner of the Department of Corrections, he formed a "chaplains council." *See id.* ¶ 3. The purpose of this council was for the chaplains to create a rough draft of an updated Religious Reference Manual. *See id.* Additionally, when a new procedure—CPP 23.1(G)(8)—was adopted on November 16, 2018, Kleymeyer, as Director of Operations, started playing a role in reviewing inmates' requests for religious accommodation. *See id.* ¶ 4.

But now back to Luther. In November 2018, Luther filed this lawsuit, alleging violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), the First Amendment, the Eighth Amendment, and the Fourteenth Amendment. *See* Compl. Luther seeks $100,000 in money damages, injunctive relief that permits him to maintain an Ital diet, and injunctive relief that permits him to purchase robes and creational banners. *See id.* Luther's suit names as Defendants KDOC, James Erwin, Christopher Kleymeyer, Skyla Grief, Dan Smith, and Janet Conover (the current KDOC Director of Operations, who assumed this position after Kleymeyer left the role in 2019). *See id.*; *see also* Mot. for Summ. J. Each named Defendant was sued in their individual and official capacities, except for Conover, who was sued only in her official capacity. *See* Compl.

In its first opinion in the matter, the Court dismissed the claims against KDOC, all official-capacity claims for monetary damages, Luther's Eighth and Fourteenth Amendment claims, and Luther's claims against Erwin. *See* Mem. Op. and Order, Dkt. 6.

In its next opinion on the matter, the Court dismissed any claim against Defendants (other than Grief) alleging they denied Luther an appropriate diet. The Court then went on to dismiss all RLUIPA and First Amendment claims for injunctive relief against Grief and Smith. *See* Mem. Op. and Order, Dkt. 18.

Later in the dispute, the Court dismissed Luther's RLUIPA claim for religious banners because Luther has since been allowed to use banners during services. *See* Mem. Op. and Order, Dkt. 53.

Currently before the Court is Kleymeyer's and Conover's Motion for Summary Judgment as to the remaining claims against them. And to review, the three claims currently pending against Kleymeyer and Conover are: (1) a RLUIPA claim pertaining to the use of robes; (2) a First Amendment claim pertaining to the use of robes; (3) a First Amendment claim pertaining to the use of creational banners.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . " Fed. R. Civ. P. 56(c)(1). Neither "conclusory allegations"

nor "speculation" nor "unsubstantiated assertions" will suffice to defeat a motion for summary judgment.  *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017).  "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### III.  DISCUSSION

#### A.  *RLUIPA Claim*

##### i.  *Legal Standard*

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014).

RLUIPA does not define the phrase "substantial burden," but the Sixth Circuit has clarified that a burden is substantial when it "force[s] an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question place[s] 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.' "  *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733–34 (6th Cir. 2007) (*quoting Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).  "Similarly, if a policy requires a petitioner to 'engage in conduct that seriously violates [his] religious beliefs' or face disciplinary

5

action, then the burden is substantial." *Mease v. Washington*, No. 2:20-CV-176, 2021 WL 1921071, at *11 (W.D. Mich. May 13, 2021) (*quoting Holt v. Hobbs*, 574 U.S. 352, 356 (2015)).

"RLUIPA provide[s] very broad protection for religious liberty," *Fox v. Washington*, 949 F.3d 270, 276 (6th Cir. 2020) (citations and quotations omitted), and courts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment, *see id.* at 277 (citations omitted).

### ii. *Application*

Luther maintains that his religion, Bobo Ashanti, a sect of Rastafarianism, requires that he wear a white robe during bi-weekly "fasting services" and on the "Holy Sabbath," and a black robe during all other "evening services and prayers." Compl. at 8. Luther alleges that Defendants substantially burdened his religious exercise by prohibiting him from wearing these robes.[1] *See* Compl.

Defendants make two arguments as to why they did not substantially burden Luther's religious exercise. *See* Mot. for Summ. J. First, they argue that Luther's grievances "were all filed before and received a response . . . before [] Kleymeyer had a role in the religious grievance process." *See id.* at 5. Second, they argue that Kleymeyer "was not a final decision-maker in th[e] process" of creating a new Religion Reference Manual.[2] *See id.* at 4.

---

[1] Luther originally claimed that the denial of creational banners also violated the RLUIPA. *See* Compl. However, those banners were subsequently provided to Luther, and as such, the RLUIPA claim regarding the creational banners has been dismissed as moot. *See* Mem. Op. and Order, Dkt. 53, at 8–9.
[2] Alternatively, Defendants argue that the November 16, 2018 modification of the Religious Reference Manual moots Luther's injunctive claims. Reply at 8–10. Defendants' argument is that the manual "provides a way for inmates to request accommodation of a religion or religious practice that is not currently represented at an institution." *Id.* at 8. The Court is not persuaded. "A case is moot if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. F.E.R.C.,* 897 F.2d 570, 575 (D.C. Cir. 1990). Here, a decision by the Court could still affect Luther's rights because he is still prohibited from purchasing religious robes, despite his having submitted a formal grievance.

The Court begins with Defendants' first argument. The dates matter here, so the Court gives them.

On October 3, 2017, Luther filed grievance number 17-10-011-G, claiming that he was being "thwarted [his] First Amendment [rights] . . . by not being permitted to purchase a Bobo Shanti Rastafari robe for religious services." Grievance Forms at 21. On November 17, 2017, Dan Smith and Skyla Grief dismissed Luther's grievance, stating that a robe is not an approved personal religious item and that Luther failed to provide evidence that his religion required him to wear the robe. *See id.* at 25. Five days later, on November 22, 2017, Luther appealed that decision. *See id.* at 26. On December 1, 2017, James Erwin upheld the original decision. *See id.* at 27. A copy of Erwin's response was mailed to Luther on January 16, 2018. *See* Dunn Aff., Dkt. 55-4, ¶ 6.

The Defendants allege that prior to November 16, 2018, Kleymeyer "had no role in the inmate grievance process or review of inmates' religious grievances." Mot. for Summ. J. at 5 (*citing* First Kleymeyer Aff., ¶ 5 ("Prior to the adoption of this policy on November 16, 2018, I was not routinely involved in the institutional inmate grievance procedure or review of inmates' religious grievances.")). Rather, the Defendants maintain that prior to November 16, 2018—which, remember, Luther's grievance was filed and dismissed before that date—Kleymeyer's sole religious affairs responsibility was "ensur[ing] the consistency of religious services within KDOC facilities." Reply at 11 (*citing* Second Kleymeyer Aff., Dkt. 59-2, ¶ 6). To achieve that goal, Kleymeyer received reports about the number of religious services held in Kentucky prisons and the number of attendees at those services, broken down by religious affiliation. *Id.* at 11–12 (*citing* Second Kleymeyer Aff. ¶ 6). According to Kleymeyer, this was the extent of his exposure to the day-to-day operations of religious affairs. *Id.* It makes sense, then, that the

7

Defendants state that Kleymeyer "did not receive notice regarding [Luther's] request for use of a religious robe." *See id.* at 6 (*citing* First Kleymeyer Aff. ¶ 5 ("Generally, I would receive notice of inmate religious grievances only when I was notified that a lawsuit had been filed against the Department of Corrections. To the best of my recollection, I was not notified of the grievances filed by Dion Luther . . . until I was notified that the present lawsuit had been filed.")).

To summarize, Defendants contend that Kleymeyer could not have substantially burdened Luther's religious practice because Kleymeyer played no part in reviewing Luther's grievance.

Luther offers a different account of Kleymeyer's responsibilities. Luther states that Kleymeyer, as the Director of Operations, "exercised supervision over religious affairs in the institutions before [] November 16, 2018." Resp. at 2. To support this, Luther relies on a WKCC Policy and Procedure that was adopted in 2012, well before Luther filed his grievance. That Policy states that an inmate's request for a new religious practice must be in writing and approved by the Director of Operations. *See* WKCC 23-00-1(II)(A)(1), Dkt. 56-1, at 1 ("If an inmate requests a specific religious service or program, it shall be made in writing to the chaplain at least forty-five days in advance and shall require approval from the Director of Operations."). Luther also argues that Kleymeyer's prior responsibility for religious accommodations "would explain why he was . . . given final 'say-so' over religious accommodations" after November 16, 2018. Resp. at 4.

With regard to the WKCC Policy, Luther's argument fails because Institutional Policies and Procedures like WKCC 23-00-1(II)(A)(1) are only rules for a single prison. Kleymeyer states in his affidavit that: "Institutional Policies and Procedures, or IPP's, are rules of the individual prisons. IPP's did not govern the operation of the Department of Corrections' central

office. Such policies did not modify my job duties as Director of Operations." Second Kleymer Aff. ¶ 9. The policy cited by Luther applies to the Western Kentucky Correctional Complex, not the Kentucky State Penitentiary, where Luther was incarcerated when he filed his grievances. *See* Grievance Forms. Thus, it makes sense that none of the Grievance Forms mention Kleymeyer by name or indicate that he had a role in the reviewal process. *See* Grievance Forms.

Still though, Luther does more than just allege that the Director of Operations failed to directly stop Luther from purchasing robes. Luther argues that the Director of Operations is responsible for the allegedly unconstitutional policy of prohibiting the purchase of religious robes. *See* Compl.; *see also* Mem. Op. and Order, Dkt. 53, at 8. Thus, because Kleymeyer could have been unaware of the grievances and still be responsible for the manual and the policy, the Court finds that Defendants' first argument is insufficient to grant a motion for summary judgment.

Luther's remaining response to Defendants' first argument—that the Director of Operations' prior responsibilities over religious affairs explains why he received more religious affairs responsibilities after November 16, 2018—is little more than speculation. Luther, for his part, expressly admits this fact, writing that his hypothesis "of course is only speculation." Resp. at 4. However, it is black letter law that speculation will not suffice to defeat a motion for summary judgment. *Jones*, 677 F. App'x at 282 ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added)); *Ondo v. City of*

*Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("[S]tatements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion." (*quoting* 10B Wright, Miller & Kane, Federal Practice and Procedure § 2738, at 345 (3d ed.1998))). Thus, Luther's arguments on this point are not adequate to overcome a motion for summary judgment.

The Court now turns to Defendants' second argument. Here, Defendants maintain that Kleymeyer did not substantially burden Luther's religious faith because Kleymeyer was not a final decision-maker in the process of creating a new Religion Reference Manual. *See* Mot. for Summ. J. at 4.

As Director of Operations, Kleymeyer formed a "chaplains council." First Kleymer Aff. ¶ 3. The goal of the council was to create a rough draft of an updated Religion Reference Manual that, after approval from other higher-ups, would replace the then-current Religious Reference Manual. *See id.* Though the council did meet, no final draft of a new manual was completed prior to when Kleymeyer left the Director of Operations position in 2019. *See id.*

Defendants interpret Luther's claims as suing the Director of Operations for not creating a new Religion Reference Manual. *See* Reply at 4. But according to Defendants, such a claim cannot survive summary judgment because Kleymeyer did not have unilateral authority to create a new manual. *See id.* at 4–5; *see also* Second Kleymeyer Aff. ¶ 10 ("As Director of Operations for the Kentucky Department of Corrections, I was not able to unilaterally make changes to Correctional Policies and Procedures (CPP's), the religious reference manual, or other similar policies. Such policy changes would require the approval of the Commissioner of the Department of Corrections and/or Secretary of Justice and Public Safety Cabinet."). Luther responds, arguing that his claim is not about the Religious Reference Manual. Surreply at 4. Rather, Luther maintains that his grievance and complaint "ha[ve] always been a question of

10

accommodation," and "Kleymeyer fail[ed] to accommodate." *Id.* at 4.  However, Defendants assert that Plaintiff's claim began as a grievance about the manual, and he should not be allowed to modify it now.[3]  *See* Reply at 4–5.

The Court has already stated that "Luther [is] not assert[ing] claims against Defendants on the basis of his grievance being denied." Mem. Op. and Order, Dkt. 53, at 6.  Rather, the Court has explained that "Luther is claiming Kleymeyer's failure to change the KDOC Religious Manual, after being made aware of his complaint, is a constitutional violation." *Id.* at 7.  Defendants' previous motion for summary judgment was denied because they did not address "Luther's argument that Kleymeyer, as Director of Operations, was responsible for the KDOC Religious Manual and failed to update the policy to allow the purchase of religious robes." *Id.* at 8.  As that language demonstrates, Defendants current argument that Kleymeyer did not have authority to change the policy is responsive to Luther's claims.  The Court therefore concludes that the Director of Operations was not responsible for the allegedly unconstitutional Religious Reference Manual.  Thus, Luther does not raise a genuine issue of material fact that Defendants have been personally involved in substantially burdening his religious rights.  Summary judgment is therefore proper for the RLUIPA claim.

    B.  ***First Amendment Claims***

        i.      <u>Legal Standard</u>

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I.  Prisoners are not without the protections of the First Amendment while

---

[3] The Court has previously interpreted Luther's claim as one about the Religious Reference Manual and the unconstitutionality of the policy as a whole, *see infra*, and the Court continues to interpret Luther's claim that way, *see infra*.  However, if Luther's claim was solely about accommodation, then Defendants' lack of involvement with the grievance process would support their motion for summary judgment, *see supra* and *infra*.

incarcerated, including the right to free exercise of religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam). However, such constitutional protections can be limited in the context of valid penological objectives. *See O'Lone*, 482 U.S. at 348; *see also Pell*, 417 U.S. at 822–23. Thus, even where they may infringe on a prisoner's constitutional rights, prison regulations that are "reasonably related to legitimate penological interests" are valid. *O'Lone*, 482 U.S. at 349; *see also Turner v. Shafley*, 482 U.S. 78, 89 (1987).

## ii. *Application*

Luther claims his First Amendment free exercise rights were violated when Defendants prohibited him from wearing religious robes and denied him access to creational banners. Luther alleges that as a member of Bobo Ashanti he is required to wear black robes and white robes, *see supra* Part III.A. Luther also maintains that his religion requires him to incorporate "creational banners" into his worship services. Compl. at 4–7. According to Luther, the "symbolism and [color] sequence" of these red/yellow/green and red/black/green banners "possess the power to free the Ethiopian people." Compl. at 5.

In their Mot. for Summ. J., Defendants make one argument as to why their actions did not violate Luther's First Amendment free exercise rights. *See* Mot. for Summ. J. at 6–7. Defendants claim that "Kleymeyer was not able to unilaterally change the existing Religion Reference Manual," therefore "Kleymeyer's failure to produce a document he had no power to produce is not an impingement on [] Luther's constitutional rights by [] Kleymeyer." *Id.* at 7. Defendants also made this argument against Luther's RLUIPA claim. For the same reasons that the Court accepted this argument there, *supra* Part III.A, the Court accepts it here.[4] Kleymeyer

---

[4] Luther's grievance and appeal for the banners, like his grievance and appeal for the robes, were filed and dismissed prior to the critical November 16, 2018 date. *See* Grievance Forms at 9–10, 13, 16.

was not a final decision-maker for the Religious Reference Manual, and Luther's request is about the Director of Operations' alleged responsibility for the manual and the resulting policy on prisoners' ability to purchase robes and creational banners. *See id.*

Accordingly, the Court grants Defendants' motion for summary judgment as it pertains to the First Amendment claim.

Defendants also argue that Luther's First Amendment claim fails because it does not meet the requirements of § 1983. Because the Court found, *supra*, that the Defendants did not have authority to change the manual or policy, and therefore did not interfere with Luther's right to freely exercise his religion, the Court does not address the merits of this argument.

### C. *Qualified Immunity*

#### i. <u>Legal Standard</u>

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847–48 (6th Cir. 2003) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity." *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, a court must determine whether "the facts alleged show [that the defendant's] conduct violated a constitutional right." *Id.* (*citing Saucier*, 533 U.S. at 201). If the plaintiff establishes that a constitutional violation occurred, "a court must next consider 'whether the right was clearly established.' " *Id.* (*quoting Saucier*, 533 U.S. at 201). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he

13

confronted." *Saucier*, 533 U.S. at 202. When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to it. *Austin*, 690 F.3d at 496 (*citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The Court may, in its discretion, decide which of these two inquiries is addressed first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

> ii.   *Application*

Defendants contend that they are entitled to qualified immunity. Here, Defendants argue that Kleymeyer did not violate Luther's constitutional rights because "Kleymeyer was not a final decision-maker for the content of the religion manual" and he "had no notice of [] Luther's grievances." Mot. for Summ. J. at 8. Defendants also use those exact same rationales to claim that the law surrounding this issue was not "clearly established." *See id.* at 8–9.

The Defendants have met their burden here. As discussed, *supra* Part III.A–B, Kleymeyer did not have authority over the contents of the Religious Reference Manual. As such, the Defendants are not responsible because of their lack of personal involvement. The Court therefore finds qualified immunity where relevant. *See Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991) ("While [the officer] presents [his lack of responsibility] as an issue of qualified immunity, it may be more appropriately characterized as a 'lack of personal involvement' defense. Regardless of the characterization, however, the result is the same.").

### IV. CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendants Mot. for Summ. J., Dkt. 55, is **GRANTED**. The Clerk of Court is **DIRECTED TO TERMINATE** Christopher Kleymeyer and Janet Conover Defendants to this action because all claims against them have been dismissed.

A telephonic conference is set for **November 23, 2021 at 1:00 p.m. Central Time**. Parties must call **1-877-848-7030** then give the **Access Code 2523122 and #, then when prompted press # again** to join the call. The purpose of this conference is to discuss Luther's remaining First Amendment and RLUIPA claims against Skyla Grief and Dan Smith for monetary damages in their individual capacities.

**IT IS SO ORDERED**

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

October 27, 2021

cc: Dion L. Luther
275398
Eastern Kentucky Correctional Complex
200 Road to Justice
West Liberty, KY 41472
PRO SE